Christopher L. Langone, James Langone, and Priscilla Langone, Plaintiffs-Respondents,

v.

American Family Mutual Insurance Company, Defendant-Appellant,†

David Boyer, Dean Health Plan, Inc., United Dominion Industries, The Travelers Company, Stritzel Heating, Inc., The Marley Company, Inc., d/b/a Weil-McLain, DEF Insurance Company, and Wisconsin Electric Power Company, Defendants.

American Family Mutual Insurance Company, Plaintiff-Appellant,†

v.

David M. Boyer, Estate of Michael Langone, Bernard J. Powell, Stritzel Heating, Inc., Weil-McLain Boiler Company, United Dominion Industries, City of Whitewater, The Travelers Companies, DEF Insurance Company, GHI Insurance Company, and JKL Insurance Company, Defendants,

Christopher Langone, James Langone, individually and as the Special Administrator of the Estate of Michael A. Langone, and Priscilla Langone, Defendants-Respondents.

---

† Petition for review denied 9/14/07.

Court of Appeals

*No. 2006AP1332. Submitted on briefs January 11, 2007. —Decided March 14, 2007.*

## 2007 WI App 121

(Also reported in 731 N.W.2d 334.)

744

On behalf of the appellant, the cause was submitted on the briefs of *David J. Pliner* of *Corneille Law Group, L.L.C.*, Madison.

On behalf of the respondents, the cause was submitted on the brief of *Larry B. Brueggeman* of *Previant, Goldberg, Uelmen, Gratz, Miller & Breggeman, S.C.*, Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. SNYDER, P.J. American Family Mutual Insurance Company appeals from a judgment awarding $100,000 to Christopher L., James and Priscilla Langone. American Family argues that the circuit court erred when it determined that its policy afforded coverage and a defense to David M. Boyer, whose actions negligently damaged the Langones. American Family asserts that the absolute pollution exclusion contained in its insurance contract with Boyer excludes coverage under the facts of this case. Because we conclude that the policy's pollution exclusion does not apply, we affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. This case arises from injuries sustained by Christopher and the death of his brother, Michael Langone, as a result of carbon monoxide poisoning. Boyer, the brothers' landlord, owned a two-family rental dwelling, which had one upper and one lower apartment. The lower level had a fireplace and, in September 1994, Boyer installed a boiler to heat the unit. On January 20, 2001, Christopher suffered personal inju-

745

ries and Michael died as a result of carbon monoxide build-up in their apartment.

¶ 3.   The Langones sued Boyer and American Family, his insurer, alleging negligence and breach of implied warranty. In their complaint, the Langones asserted:

> The aforesaid boiler was equipped with a heating mechanism consisting of a gas fired burner and a system by which fire would be started on the burner when needed to heat the aforesaid lower rental apartment. When a fire was burning in the fireplace at the same time that a fire was burning on the boiler burner, a flue reversal would occur as a result of which the fire burning on the boiler burner would cause carbon monoxide to be emitted into said lower rental apartment.

¶ 4.   American Family moved for summary judgment arguing that it had no duty to defend or indemnify Boyer. American Family argued that the "Absolute Pollution Exclusion" in Boyer's policy absolved it of any duty to defend or to provide coverage. Boyer's insurance policy included the following language:

> **2. Exclusions**. This insurance does not apply to:
>
> . . . .
>
> **g. POLLUTION**.
>
> (1) **We** will not pay for **bodily injury** or **property damage** arising out of actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants:
>
> (a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

. . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

¶ 5.   The circuit court denied American Family's motion for summary judgment. Specifically, the court concluded that the term "pollutant" was ambiguous and presented a genuine issue of material fact. American Family moved for clarification and the court rephrased its ruling, holding that because the policy language was ambiguous, there was "coverage under American Family's policy as a matter of law."

¶ 6.   Litigation continued until the parties reached a settlement agreement in early 2006. Under the "Stipulation and Order for Judgment," American Family paid the Langones an agreed upon sum in exchange for a full release and dismissal with prejudice regarding all claims against Boyer. American Family reserved the right to appeal the circuit court's finding of coverage as a matter of law. The circuit court entered judgment accordingly, and American Family appeals.

## DISCUSSION

¶ 7.   American Family contends that carbon monoxide qualifies as a "pollutant" under the pollution exclusion clause in Boyer's policy. It makes three primary assertions concerning the exclusion clause: (1) the clause applies to damages caused by carbon monoxide when the court considers the plain meaning of the clause and the dictionary definition of carbon monoxide; (2) the nature of carbon monoxide as a substance qualifies it as a "pollutant"; and (3) a reasonable insured would expect the definition of "pollution" to encompass carbon monoxide.

## Standard of Review

¶ 8.    Interpretation of a written insurance policy is a question of law that the appellate court reviews de novo. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. The language of an insurance policy is interpreted in the same way as other contracts. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990). Courts consider the language's plain and ordinary meaning as understood by a reasonable insured. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). Ambiguities in policy language will be construed against the insurer. *Smith*, 155 Wis. 2d at 811. However, we will not eviscerate a policy exclusion that is clear from the face of the policy. *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 121, 596 N.W.2d 429 (1999).

## Analytical Approach

¶ 9.    In *Nationwide Mutual Insurance Co. v. National REO Management, Inc.*, 205 F.R.D. 1, 9–10 (D.D.C. 2000), the court observed the development of three approaches to interpreting pollution exclusion clauses. Some courts have held that the pollution exclusion clause "clearly and unambiguously" bars coverage for all liability arising from carbon monoxide emissions. *Id.* Courts adopting a second approach have held that the clause is unclear when applied to residential carbon monoxide leaks because the clause might be read to apply only to industrial or environmental pollution. *Id.* at 10. Finally, the third approach, recognized as a "minority" approach, is based on a "belief that the

748

reasonable expectations of the insured should control over the actual contract language, even if it is unambiguous." *Id.*

¶ 10.   Though Wisconsin courts have not previously addressed carbon monoxide in the context of a pollution exclusion clause, our supreme court has held that we do not look to the expectations of the insured in the face of a clear and unambiguous exclusion. *See Peace*, 228 Wis. 2d at 121. Here, American Family asserts that the meaning of "pollutant" unambiguously includes carbon monoxide. The Langones counter that because carbon monoxide, like carbon dioxide, does not have the harmful effect of an irritant or contaminant unless or until it accumulates to certain levels, it is contextually ambiguous.

¶ 11.   Our first task, therefore, is to determine whether American Family's policy language is susceptible to more than one reasonable interpretation.

### The Plain Language of the Exclusion

¶ 12.   American Family argues that the pollution exclusion clause unambiguously applies to damage caused by carbon monoxide when the plain meaning and dictionary definitions of policy terms and carbon monoxide are considered. American Family first cites to the broad policy definition of "pollutant," which includes "any . . . gaseous or thermal irritant or contaminant, including . . . vapor [and] fumes." Our supreme court has acknowledged that a pollution exclusion such as the one at issue here is intended to have "broad application." *See Peace*, 228 Wis. 2d at 137.[1]

---

[1] The pollution exclusion at issue in *Peace v. Northwestern National Insurance Co.*, 228 Wis. 2d 106, 122, 596 N.W.2d 429

¶ 13. We have also looked to dictionary definitions of terms not defined in the policy, for example: "irritant" means "the source of irritation, especially physical irritation"; "contaminant" means "one that contaminates"; and "contaminate" means "to make impure or unclean by contact or mixture." *See id.* at 122 (citing the AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 406, 954 (3d ed. 1992)). We also observe the definition for carbon monoxide: "a colorless odorless very toxic gas CO that burns to carbon dioxide with a blue flame, that is formed as a product of the incomplete combustion of carbon." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 336 (1993). Taken together, American Family argues, a pollutant includes any gas, fume or vapor that creates impurity by contact or mixture, or causes physical irritation; thus, carbon monoxide is a pollutant.

¶ 14. In *Peace*, the supreme court considered dictionary definitions of terms in a pollution exclusion clause with regard to lead in paint. *Peace*, 228 Wis. 2d at 120, 122–23. It "[looked] at the text of the pollution exclusion clause in relation to the facts of [the] case" and concluded that the term "pollution" as specifically defined in the policy, was "not fairly susceptible to more than one construction." *Id.* at 136. Nonetheless, policy and dictionary definitions alone will not necessarily render the policy language unambiguous. *See id.* at 137; *see also Donaldson v. Urban Land Interests, Inc.,* 211

(1999), defined "pollutant" to include: "(1) any solid irritant; (2) any liquid irritant; (3) any gaseous irritant; (4) any thermal irritant; (5) any solid contaminant; (6) any liquid contaminant; (7) any gaseous contaminant; and (8) any thermal contaminant."

Wis. 2d. 224, 233, 564 N.W.2d 728 (1997) (the reach of the exclusion must be "circumscribed by reasonableness").

¶ 15. Indeed, the fact that the supreme court has found similar pollution exclusion clauses ambiguous with regard to the facts of one case, but not to another, demonstrates that policy and dictionary definitions are not dispositive. In *Donaldson*, the court held that a pollution exclusion clause was ambiguous, and thus did not exclude coverage for damage caused by carbon dioxide. *Donaldson*, 211 Wis. 2d at 235. Two years later, the *Peace* court considered a clause substantially similar to that in *Donaldson* and determined that its language was unambiguous when applied to lead poisoning from paint debris. *Peace*, 228 Wis. 2d at 136. The *Peace* court reconciled the apparent conflict when it stated that "[the] decision in *Donaldson* ... is not inconsistent with [*Peace's*] conclusion .... This court found the pollution exclusion clause did not apply to the *particular facts of that case*." *Peace*, 228 Wis. 2d at 136–37 (emphasis added).

¶ 16. The Langones assert that the term "pollutant" in American Family's policy is indeed ambiguous and must be considered in light of the context presented here. They argue that carbon monoxide emissions resulting from simultaneous operation of both the fireplace and the boiler are not contemplated by the term "pollutant" in the policy.

¶ 17. We agree with the Langones. The policy and dictionary definitions of the term "pollutant" do not suffice to unambiguously categorize carbon monoxide as pollution under the facts of this case. We must, as *Peace* and *Donaldson* demonstrate, consider the nature of the substance involved. *See Peace*, 228 Wis. 2d at

751

137–38 (Lead paint chips "are widely, if not universally, understood to be dangerous . . . . The toxic effects of lead have been recognized for centuries. Reasonable owners . . . understand their obligation to deal with the problem of lead paint."); *Donaldson*, 211 Wis. 2d at 234 ("[E]xhaled carbon dioxide is universally present and generally harmless in all but the most unusual instances . . . . We are therefore hesitant to conclude that a reasonable insured would necessarily view exhaled carbon dioxide in the same class as [pollutants].").

### *The Nature of Carbon Monoxide and the Context of the Case*

¶ 18. American Family argues that carbon monoxide qualifies as a "pollutant" under the exclusion clause when the nature of the substance is considered. It emphasizes that society is aware of the dangers of carbon monoxide and asserts that a reasonable insured would understand the substance to be a contaminant or irritant under the clause. American Family offers as examples the fact that heating systems are designed to prevent release of carbon monoxide, and that it is common knowledge that a person should not leave a motor vehicle running in a garage.

¶ 19. Then again, most people are exposed to carbon monoxide in small quantities every day. Like carbon dioxide, carbon monoxide is colorless, odorless, and present in the air around us. According to the Environmental Protection Agency, homes without a gas stove have average carbon monoxide levels between .5 and 5 parts per million while areas near a properly adjusted gas stove may have levels as high as 5 to 15

parts per million.[2] Thus, the concentrated level of carbon monoxide in the Langones' apartment could be described as a normal condition gone awry. *See Donaldson*, 211 Wis. 2d at 233 (the high concentration of carbon dioxide resulted from "an everyday activity 'gone slightly, but not surprisingly, awry.'" (citation omitted)).

¶ 20. Consequently, we remain unconvinced by American Family's argument that the potentially hazardous character of carbon monoxide unambiguously qualifies it as a pollutant.

### Reasonable Expectations Test

¶ 21. A pollution clause is ambiguous where the insured could reasonably expect coverage under the facts of the case. *See Donaldson*, 211 Wis. 2d at 233. The Langones direct us to *Peace* for the proposition that "a reasonable insured would not expect [the clause] to include the avoidance of liability for the accumulation of carbon dioxide in an office because provisions were not made for introducing fresh air into the office." *Peace*, 228 Wis. 2d at 136–37 (citing with approval, *Donaldson*, 211 Wis. 2d at 229). Likewise, they argue, Boyer could not have expected the pollution exclusion to bar coverage for the accumulation of carbon monoxide where a flue reversal caused the hazardous condition.

¶ 22. The *Donaldson* court reasoned that the pollution exclusion clause must be circumscribed by reasonableness because of its vast reach.

---

[2] ENVIRONMENTAL PROTECTION AGENCY, Indoor Air Quality: Carbon Monoxide, Levels in Homes, www.epa.gov/iaq/co.html (last visited March 6, 2007).

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for there is virtually no substance or chemical in existence that would not irritate or damage some person or property. Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results.

*Donaldson*, 211 Wis. 2d at 232 (citing *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992)).

¶ 23. American Family asserts that even if the Court applies a reasonable expectations test, no reasonable insured person would expect coverage for damages caused by carbon monoxide. American Family distinguishes the facts of both *Peace* and *Donaldson* and argues that carbon monoxide poisoning is more analogous to damage caused by lead paint debris, as in *Peace*, than to damage caused by a build-up of carbon dioxide, as in *Donaldson*.

¶ 24. Because the *Peace* and *Donaldson* courts applied a reasonable expectations test to the same policy language but reached different conclusions, it is important to consider the facts in each case. First, in *Donaldson*, the court considered whether carbon dioxide fell under a pollution exclusion clause when workers became ill from a build-up of the exhaled carbon dioxide due to inadequate ventilation. *See Donaldson*, 211 Wis. 2d at 227, 229. The *Donaldson* court determined that it was a "sick building" case. *Id.* at 227. The court concluded that although carbon dioxide could "achieve an injurious concentration in a poorly ventilated area," no reasonable insured person would expect it to meet the definition of a "pollutant." *Id.* at 232–33.

¶ 25. Two years later, the *Peace* court considered whether lead present in paint chips or dust was a

pollutant within the meaning of a pollution exclusion clause. *See Peace*, 228 Wis. 2d at 120. The court observed that many educational programs increased awareness of the dangers posed by lead paint and therefore, "an ordinary property owner could not reasonably expect to purchase a standard liability insurance policy with a pollution exclusion clause, and thereby shift to the insurer liability for personal injuries arising from a person's ingestion of lead . . . at or from the insured premises." *Id.* at 147.

¶ 26.   We conclude that the carbon monoxide poisoning here is more analogous to the *Donaldson* case involving carbon dioxide poisoning. American Family is correct in its assertion that most people are aware of the dangers of high levels of or extended exposure to carbon monoxide; however, people are exposed to low levels of carbon monoxide every day. Like *Donaldson*, this is a "sick building" case where an omnipresent substance became concentrated due to a ventilation defect. Carbon monoxide, like carbon dioxide, becomes harmful when levels are abnormally high or exposure is unusually extended. The adverse consequences to Christopher and Michael resulted from the "sick building." Accordingly, we hold that the extraordinary concentration of carbon monoxide in Boyer's rental property would not ordinarily be characterized as a "pollutant." Boyer could reasonably expect coverage for damages caused by an accumulation of a substance that is routinely present.

*Hostile Fire Exception*

¶ 27.   In an alternative argument, the Langones contend that coverage is available under the hostile fire exception to the pollution exclusion. We need not address this argument because our analysis resolves the appeal on other grounds.

## CONCLUSION

¶ 28. We conclude that the pollution exclusion clause does not .apply to carbon monoxide poisoning under the facts of this case. A substance may or may not be a pollutant under the terms of a policy exclusion depending on the context or environment in which the substance is involved; furthermore, the term "pollution" is ambiguous where the insured could reasonably expect coverage under the facts of the case. *See Donaldson*, 211 Wis. 2d at 233. Ambiguities in insurance policies are construed against the insurer. Ambiguous coverage clauses are construed broadly in favor of coverage and ambiguous exclusions are construed narrowly against the insurer. *See id.* at 230. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.