WILSON MUTUAL INSURANCE COMPANY,
Plaintiff-Respondent,†

v.

Robert FALK and Jane Falk,
Defendants-Appellants,

STATE of Wisconsin Department of
Natural Resources, Lee Laatsch, Michael Jante,
Jessica Jante, Ruth Hetzel, Jeff Wiedmeyer,
Kimber Wiedmeyer, Paul Lorge, Tammy Lorge,
Paul Wilkins, Addicus Jante and Trilogy Health
Insurance Inc., Defendants.
[Appeal No. 2013AP691]

WILSON MUTUAL INSURANCE COMPANY,
Plaintiff-Respondent,†

v.

Robert FALK, Jane Falk, State of Wisconsin
Department of Natural Resources, Lee Laatsch,
Ruth Hetzel, Paul Wilkins and Trilogy Health
Insurance, Inc., Defendants,

Michael JANTE, Jessica Jante, Jeff Wiedmeyer,
Kimber Wiedmeyer, Paul Lorge, Tammy Lorge
and Addicus Jante, Defendants-Appellants.
[Appeal No. 2013AP776]

Court of Appeals

† Petition for Review granted April 17, 2014.

*Nos. 2013AP691, 2013AP776.*
*Submitted on briefs October 15, 2013.*
*—Decided December 11, 2013.*

2014 WI App 10

(Also reported in 844 N.W.2d 380.)

On behalf of the defendants-appellants (Robert and Jane Falk), the cause was submitted on the briefs of *Ronald R. Ragatz* of *DeWitt Ross & Stevens*, Madison.

On behalf of the defendants-appellants (Michael & Jessica Jante, Jeff & Kimber Wiedmeyer, Paul & Tammy Lorge and Addicus Jante), the cause was submitted on the briefs of *Ryan J. Hetzel* of *Hetzel & Nelson*, West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Ryan R. Graff* and *Katelyn P. Sandfort* of *Nash, Spindler, Grimstad & McCracken LLP*, Manitowoc.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J. Manure has long been a normal and necessary part of the operation of a dairy farm.

Dairy farmers have cows. Cows produce milk and manure. Dairy farmers utilize both milk and manure as assets to their farm operations: farmers sell milk, and farmers spread manure on their fields as a nutrient. The fields provide feed for the cows who repeat the cycle of milk and manure.

¶ 2. The issue raised in this appeal is whether cow manure is a pollutant under a farmowners policy issued by Wilson Mutual Insurance Company to Robert and Jane Falk. That policy defined "pollutant" as an "irritant or contaminant," including "waste." The circuit court found that cow manure is a pollutant as it constitutes "waste" and that, accordingly, Wilson Mutual's farmowners policy does not provide coverage for damages caused by the Falks' manure spreading.

¶ 3. We reverse as we conclude that manure is not a pollutant under the farmowners policy. Used improperly, both manure and milk can cause irritation or contamination. The fact that milk *can* cause irritation or contamination in certain circumstances does not equate to a reasonable person defining milk as a "pollutant." A reasonable farmer likewise does not see manure as either "waste" or a "pollutant."

## BACKGROUND

¶ 4. The Falks own and operate a dairy farm. The Falks have 600 head of cows/cattle, plus or minus depending on the year, and over 1670 acres of land in their farming operation. The Falks obtained a "farm" insurance policy from Wilson Mutual to provide property and personal liability coverage.[1] The policy includes coverage for the following scheduled property:

---

[1] The policies are labeled "PERSONAL LIABILITY COVERAGE (FARM)" and "FARM COVERAGE." For ease of reference, we refer to these as the "farmowners policy."

- 3600–gallon Husky manure tank
- manure pump with motor
- 8124 Knight manure spreader
- 4500 Calumet manure tanker
- 8124 Knight manure spreader
- 5250 Houle manure tanker

¶ 5. The policy provides that Wilson Mutual will pay all sums the Falks become liable by law to pay because of property damage or bodily injury caused by an occurrence to which coverage under the policy applies. The policy expressly excludes losses resulting from the "discharge, dispersal, seepage, migration, release, or escape of 'pollutants' into or upon land, water, or air" and "any loss, cost, or expense arising out of any . . . claim or suit by or on behalf of any governmental authority relating to testing for, . . . cleaning up, removing, . . . or in any way responding to or assessing the effects of 'pollutants.' " "Pollutant" is defined in the policy as "any solid, liquid, gaseous . . . irritant or contaminant, including . . . waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of."

¶ 6. In early 2011, the Falks used manure from their cows as fertilizer for their fields pursuant to a nutrient management plan prepared by a certified crop agronomist and approved by the Washington County Land and Water Conservation Division. In May 2011, the Wisconsin Department of Natural Resources notified the Falks that manure from the Falks' farm had polluted a local aquifer and contaminated their neighbors' water wells. Shortly thereafter, several neighbors demanded compensation. The Falks notified Wilson Mutual of the claims.

¶ 7. Wilson Mutual thereafter commenced this action, seeking a declaration that it had no duty to defend or indemnify the Falks for any damages arising out of the water-well contamination as manure is a "pollutant" under the farmowners policy's pollution exclusion clause. Following the submission of arguments and affidavits, the circuit court concluded that the pollution exclusion in the Wilson Mutual policy applied so as to exclude coverage, finding that "[a] reasonable person in the position of the Falks would understand cow manure to be waste." The court declared that Wilson Mutual had no duty to defend or indemnify the Falks. The Falks appeal.[2]

## STANDARD OF REVIEW

¶ 8. This appeal requires us to interpret an insurance contract, a question of law that we review de novo. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65.

## DISCUSSION

¶ 9. The question presented is straightforward: does cow manure fall within the definition of a "pollutant" under Wilson Mutual's farmowners policy? Interpretation of insurance contract language is governed by the same principles that guide our interpretation of other contracts, with a focus on the intent of the parties. *Peace v. Northwestern Nat'l Ins. Co.*, 228

---

[2] We granted the parties' motion to consolidate the appeals by the Falks and several neighbors named as adverse parties. *See* Wis. Stat. Rule 809.10(3) (2011–12).

Wis. 2d 106, 120–21, 596 N.W.2d 429 (1999). Policy language is interpreted according to its plain and ordinary meaning as understood by a reasonable insured. *Id.*

██

¶ 10. We start with the language of Wilson Mutual's farmowners policy. The policy defines "pollutant" as (1) any solid, liquid, or gaseous irritant or (2) any solid, liquid, or gaseous contaminant. *Cf. Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶ 27, 338 Wis. 2d 761, 809 N.W.2d 529. Based on this language alone, we might conclude that manure is a pollutant. Manure is certainly gaseous, often liquid, solid in winter, and *can be* both an irritant and a contaminant. But our supreme court has instructed that we must do more than rely on this "undeniably broad" and "virtually boundless" language, "for there is virtually no substance or chemical in existence that would not irritate or damage some person or property." *Id.*, ¶ 30 (citation omitted). "[T]he reach of the pollution exclusion clause thus must be circumscribed by reasonableness, lest everyday incidents be characterized as pollution and the contractual promise of coverage be reduced to a dead letter." *Id.* (citation omitted). We take the linchpin of the court's methodology to be the requirement that we examine the meaning "as understood by a reasonable person *in the position of the insured.*" *Id.*, ¶ 22 (emphasis added).

¶ 11. Whether a substance is a pollutant under a policy of insurance has been thoroughly considered in Wisconsin, with somewhat inconsistent results. In *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 564 N.W.2d 728 (1997), the court concluded that exhaled carbon dioxide in an office building does not fall within the definition of a pollutant as a reasonable

467

insured (one who purchases property and liability coverage for office buildings) would not necessarily understand that definition to include exhaled carbon dioxide. *Hirschhorn*, 338 Wis. 2d 761, ¶ 30. Exhaled carbon dioxide, while potentially harmful in a confined and poorly ventilated area, is "universally present and generally harmless" and hence not a pollutant for purposes of the exclusion clause. *Id.* In contrast, in *Peace*, the pollution exclusion excluded coverage for lead paint chips as, unlike exhaled carbon dioxide, lead paint is widely if not universally understood to be dangerous. *Hirschhorn*, 338 Wis. 2d 761, ¶ 32. Accordingly, "a reasonable person in the position of the insured, an owner of rental property, would consider lead present in paint to be a pollutant." *Id.*

¶ 12. More recently, in *Hirschhorn*, our supreme court found that bat guano—a mixture of bat feces and urine—falls unambiguously within the term "pollutants" as defined in a homeowners policy pollution exclusion substantially similar to Wilson Mutual's. *See id.*, ¶¶ 25, 33. The court identified its "primary inquiry" as "whether a reasonable person in the position of the insured would understand bat guano to be waste." *Id.*, ¶ 34. Concluding in the affirmative, the court reasoned that

> [u]nlike exhaled carbon dioxide, bat guano is not "universally present and generally harmless in all but the most unusual instances." To the contrary, bat guano, like lead present in paint, is a unique and largely undesirable substance that is commonly understood to be harmful. A reasonable homeowner would therefore understand bat guano to be a pollutant.

*Id.*, ¶ 37 (citations omitted).

¶ 13. Examining the pollution exclusion from the standpoint of "a reasonable person in the position of the insured" goes only so far in understanding our precedent, however. In *Donaldson*, the pollution exclusion was found to be ambiguous. *Donaldson*, 211 Wis. 2d at 233. In *Peace*, the pollution exclusion was found to be unambiguous, despite its similarity to the exclusion at issue in *Donaldson*. *Peace*, 228 Wis. 2d at 136–38. We addressed the dichotomy of these ambiguity findings in *Langone v. American Family Mutual Insurance Co.*, 2007 WI App 121, ¶ 15, 300 Wis. 2d 742, 731 N.W.2d 334. *Langone* involved injuries caused by a carbon monoxide buildup triggered by the joint operation of a fireplace and boiler in an apartment. *Id.*, ¶¶ 2–3. We determined that *Donaldson* and *Peace* required us to "consider the nature of the substance involved" to determine whether a pollution exclusion precluded coverage. *Langone*, 300 Wis. 2d 742, ¶ 17. "A substance may or may not be a pollutant under the terms of a policy exclusion depending on the context or environment in which the substance is involved." *Id.*, ¶ 28. As carbon monoxide is an "omnipresent substance" that "becomes harmful when levels are abnormally high or exposure is unusually extended," we found that the extraordinary concentration of carbon monoxide in the apartment would not ordinarily be characterized as a pollutant and therefore the pollution exclusion did not bar coverage. *Id.*, ¶ 26.

¶ 14. Applying these principles to the facts of this case, we conclude that the pollution exclusion in Wilson Mutual's farmowners policy does not apply to manure used as fertilizer on a farm. A reasonable farmer would not consider manure to be a "pollutant," an "irritant," a "contaminant," or "waste." *Cf. Hirschhorn*, 338 Wis. 2d

761, ¶¶ 33–34, 37. Manure is an everyday, expected substance on a farm that is not rendered a pollutant under the policy merely because it may become harmful in abnormally high concentrations or under unusual circumstances. *See Langone,* 300 Wis. 2d 742, ¶ 26.

¶ 15. Manure is a matter of perspective; while an average person may consider cow manure to be "waste," a farmer sees manure as liquid gold. Manure in normal, customary use by a farmer is not an irritant or a contaminant, it is a nutrient that feeds the farmer's fields that in turn feeds the cows so as to produce quality grade milk. Manure in the hands of a dairy farmer is not a "waste" product; it is a natural fertilizer. While bat guano is "waste" to a homeowner, and lead paint chips are universally understood by apartment building owners to be dangerous and pollutants, manure is beneficial to a dairy farmer. Manure, by act of nature, has always been universally present on dairy farms and, if utilized in normal farming operations, is not dangerous.

¶ 16. Examining the definition of "pollutant" in Wilson Mutual's farmowners policy as it is understood by a reasonable person in the position of the insured—in this case, a "reasonable farmer"—we conclude that manure is a nutrient used by farmers to feed their fields, which in turn feeds their cows, and is not a pollutant. Wilson Mutual can express no surprise in our finding given that it insured the Falks' "manure tank," "manure pump," two "manure spreaders," and two "manure tankers." Wilson Mutual's argument that cow manure is a pollutant under its policy is belied by its very act of covering property with the express purpose of pumping, storing, and spreading that manure. Wilson Mutual clearly understands that part of the normal operations of dairy farming is the spreading of manure.

It cannot now seriously contend that paying claims related to the Falks' manure spreading is "a risk it did not contemplate and for which it did not receive a premium." *Hirschhorn*, 338 Wis. 2d 761, ¶ 24.

¶ 17. As our finding that cow manure is not a pollutant under Wilson Mutual's farmowners policy is dispositive of this appeal, we need not address whether the losses resulted from the "discharge, dispersal, seepage, migration, release, or escape" of a pollutant, *see id.*, ¶ 25, or any other issue raised by the parties.

*By the Court.*—Judgment reversed.